**BREUER ELECTRIC MANUFACTUR-
ING CO., Plaintiff-Appellee,**

v.

**TORONADO SYSTEMS OF AMERICA,
INC., and Michael Marshak a/k/a Mi-
chael Majchrzak, Defendants-Appel-
lants.**

No. 81–2511.

United States Court of Appeals,
Seventh Circuit.

Argued May 6, 1982.

Decided Aug. 16, 1982.

Richard B. Harty, Wheaton, Ill., for defendants-appellants.

Michael Piontek, Gary Juettner & Pyle, Chicago, Ill., for plaintiff-appellee.

Before WOOD and ESCHBACH, Circuit Judges, and LARSON,* Senior District Judge.

* The Honorable Earl R. Larson, United States Senior District Judge for the District of Minnesota, sitting by designation.

ESCHBACH, Circuit Judge.

The issues presented in this appeal from a default judgment are: whether the district court abused its discretion in declining to set aside the original entry of default; whether the district court abused its discretion in declining to grant relief from the default judgment; and whether the relief awarded was appropriate. We affirm.

Plaintiff Breuer Electric Manufacturing Company (Breuer) sells vacuum cleaners, other cleaning machinery and cleaning solutions under its "Tornado" trademark. The "Tornado" mark has been registered to and in use by Breuer for more than fifty years. The wholesale value of the Tornado brand products sold by Breuer during the period 1970 through 1980 exceeded $70,000,000, and an average of 140 persons have been employed in the production of these goods. Given Breuer's long, continuous use of the mark, its extensive sales of products bearing the mark and substantial promotional efforts, the mark is one of Breuer's most valuable assets. Individual defendant Michael Marshak is the president of corporate defendant Toronado Systems of America (TSA), which he founded in 1974. TSA sells car wash equipment, including automobile vacuum cleaners and cleaning solutions, under the names "Tornado" and "Toronado."

Seeking to persuade defendants to cease using the registered mark "Tornado" and the similar term "Toronado" in connection with defendants' business, Breuer engaged in settlement negotiations with TSA and Marshak for at least one year prior to filing suit. Failing to achieve what it desired by these means, Breuer ultimately filed suit in the district court on September 20, 1980, accusing defendants of trademark infringement and unfair competition and of violating analogous Illinois laws pertaining to deceptive trade practices.

Having been duly served on September 25, 1980, defendants were required by Rule 12(a), Fed.R.Civ.P., to file an answer or one of the responsive motions permitted under Rule 12 within 20 days after that date. However, although an appearance was filed on defendants' behalf on October 15, 1980, defendants still had failed to answer or otherwise respond to the complaint as of November 17, 1980, at which time plaintiff filed a "motion to show cause why default should not be entered for failure to answer." In addition to setting forth the grounds for entry of default, this motion applied for a default judgment granting injunctive and monetary relief. On November 21, 1980, the district judge considered the motion for default at a hearing in open court at which defendants were represented by counsel. At the close of this hearing the judge stated on the record that he was entering the motion for default; the judge then admonished defense counsel as follows:

If you want to ask leave to plead you are going to have to file something that sets forth the reasons for the delay because [relief from entry of default] is not just granted as a matter of course under the Federal rules.

The trial court held a second hearing on December 4, 1980 to give defendants an additional opportunity to respond to the entry of default. Immediately prior to this hearing, defendants filed an "answer to motion for default," and tendered to plaintiff's counsel a proposed answer to the complaint. During the hearing on December 4, 1980, the trial judge warned defense counsel that the papers defendants had filed as of that date did not appear to satisfy the requirements for setting aside a default. On January 14, 1981, having received nothing further from defendants, the trial court granted plaintiff's motion for default judgment as to liability. Defendants then took a premature appeal which was dismissed by this court for want of appellate jurisdiction in an unpublished order.

On May 18, 1981, the trial court held an evidentiary hearing to determine what relief, if any, was to be granted plaintiff. Defendants received advance notice and were represented by counsel at this hearing. Plaintiff waived monetary relief beyond one dollar in nominal damages and asked that defendants be ordered to cease further use of the terms "Tornado" and "Toronado"

and destroy all infringing materials. Plaintiff called defendant Marshak as a witness and also called a Breuer officer who testified to the nature of Breuer's business and the likelihood that defendants' use of the terms in question engendered confusion in the marketplace for plaintiff's products. Defense counsel cross-examined plaintiff's witness but presented no other evidence. After the close of all the evidence, defendants submitted, rather incongruously, a "motion for a directed verdict." For the most part, this untimely and unorthodox motion merely makes conclusory assertions that plaintiff failed to prove the essential elements of its claims of trademark infringement and unfair competition; the motion addresses the question of appropriate relief only to the extent that it contends in a single sentence, without any elaboration, that irreparable harm was not established.

In a judgment order dated August 10, 1981, the trial court denied defendants' motion for directed verdict and granted the relief plaintiff requested. Plaintiffs were awarded one dollar in damages and defendants were ordered to:

1. cease using the names "Tornado" and "Toronado" in connection with the sale of vacuum cleaning equipment, auto washing machinery and cleaning solutions;

2. deliver-up for destruction any materials in their possession bearing the disputed names;

3. delete the disputed names from their buildings and vehicles; and,

4. acquire a different corporate name.

■ Although Rule 55(a), Fed.R.Civ.P. refers to entry of default by the clerk, it is well-established that a default also may be entered by the court. 6 Moore's Federal Practice ¶ 55.03[1] at 55–31 (1976 ed.). We are satisfied that the trial judge's statements on the record in open court at the November 21, 1980 hearing constituted a proper entry of default. Thus, in order to have the entry of default set aside, it was incumbent upon defendants to show: good cause for their default, quick action to correct it and a meritorious defense to plaintiff's complaint. *Chandler Leasing Corp. v. UCC, Inc.*, 91 F.R.D. 81 (N.D.Ill.1981) (Aspen, J.); *United States v. Topeka Livestock Auction, Inc.*, 392 F.Supp. 944, 950–51 (N.D. Ind.1975) (Eschbach, C. J.). *See generally* 10 Wright & Miller, Federal Practice & Procedure § 2692 at 300 (1973 ed.).

■ Defendants' "good cause" showing was weak. They asserted as follows in their "answer" to the motion for default:

1. That the Principal Defendant is a Corporation, and that there are two (2) new shareholders (owners) of the said Corporation.

2. That said Parties were not aware of the issues involved in the instant cause until suit was instituted.

3. That a meeting relative to possible settlement was had of the said Parties, and a review was made of a "Proposed Settlement Agreement" submitted to Defendants by the Plaintiff herein.

4. That said Defendants were attempting to control and limit the expense of this litigation and therefore requested Counsel to delay the filing of Pleadings herein.

5. That the Plaintiff has not been prejudiced by the delay in this cause.

Regardless of the advent of two new shareholders, it is clear that the individual defendant, Marshak, and the corporate defendant, TSA, through its agent, Marshak, were "aware of the issues" long before this suit was filed, having been involved in the settlement talks. Defendants' argument that the trial court's consideration of the prior settlement negotiations violated Rule 408, Fed.R.Evid., is ridiculous. Rule 408 controls when evidence of settlement attempts is offered "to prove *liability*" (emphasis added), but it "does not require exclusion when the evidence is offered for another purpose. . . ." In this case, the "settlement" evidence was properly presented below to rebut defendants' assertion that they had not been aware of the issues until the suit was filed.

Furthermore, defendants gave not the slightest indication of any specific defense on the merits. They merely tendered a general denial which asserts that they are not liable to plaintiff. The showing of a meritorious defense that is necessary to set aside a default requires more than the bare legal conclusions set forth in defendants' proposed answer. *See Chandler Leasing Corp., supra*, 91 F.R.D. at 84; *Topeka Livestock Auction, supra*, 392 F.Supp. at 951.

■ Given the weakness of defendants' "good cause" showing and the conclusory nature of their proposed answer, the district court was well within its discretion in refusing to set aside the default and proceeding to grant the default judgment as to liability, having afforded defendants sufficient advance notice and a hearing, as Rule 55(b) requires when, as here, an appearance had been filed on their behalf.

■ We are also satisfied that the motion for directed verdict at the close on the hearing as to relief was properly denied. Most of the issues raised in the motion for directed verdict had already been decided against defendants in connection with the entry of the default judgment. The default judgment established, as a matter of law, that defendants were liable to plaintiff as to each cause of action alleged in the complaint. *See Thomson v. Wooster*, 114 U.S. 104, 5 S.Ct. 788, 29 L.Ed. 105 (1885) (patent infringement case). The motion for directed verdict was untimely and essentially futile insofar as it sought to reopen the question of liability. In any event, to establish trademark infringement, a plaintiff only need show a likelihood of confusion, *see* 15 U.S.C. § 1114(1), and plaintiff's showing of a likelihood of confusion (at the hearing on relief) was essentially uncontroverted. A likelihood of confusion was shown notwithstanding the fact that plaintiff's and defendants' businesses are not perfectly coterminous. The more closely products are related to each other, the more likely it is that consumers will be confused by similar names, but the two products "need not be in direct competition for infringement to exist." *Union Carbide Corp. v. Ever-Ready,*

*Inc.*, 531 F.2d 366, 382 (7th Cir.) (likelihood of confusion between plaintiff's batteries and defendant's miniature light bulbs bearing similar brand name), *cert. denied*, 429 U.S. 830, 97 S.Ct. 91, 50 L.Ed.2d 94 (1976). Defendants did market some vacuum cleaners under the name "Toronado," which is strikingly similar to the name under which plaintiff markets its vacuum cleaners. Defendants' other products are advertised in various trade publications that are circulated to plaintiff's industrial customers. Moreover, there is a certain logical nexus between the markets for industrial vacuum cleaners and car wash machinery. Although the default judgment freed plaintiff from the requirement of proving a likelihood of confusion, such a showing was made in any event.

■ The question of the proper relief need not detain us. Plaintiff's various and inter-related claims for relief are grounded on separate federal and state statutory causes of action. As to each such cause of action the relevant statutory framework specifically provides for the type of injunctive relief that was awarded in this case. *See* 15 U.S.C. §§ 1114 and 1116; Ill.Rev. Stat. ch. 121½, § 313. Given the large volume of plaintiff's vacuum cleaner business and its long association with the "Tornado" mark, the district court was clearly entitled to conclude that defendants' use of the same and a similar term was irreparably injurious to plaintiff; that the injury to plaintiff outweighed any harm defendants may sustain in being unable to use the names in question; and that the public interest would not be disserved by the issuance of such injunctive relief. We see no reason to disturb the relief afforded below.

■ Finally, defendants contend in their principal brief that they should have been granted relief from the default judgment. Although it does not appear that defendants ever filed a proper Rule 60(b), Fed.R. Civ.P., motion to that effect in the district court, we will generously construe the motion for directed verdict as the equivalent of a Rule 60(b) motion in order to rescue defendants from yet another apparent

waiver. The elements for relief from default judgment are basically the same as the elements for setting aside an entry of default, although the tests are more stringently applied in the case of a default *judgment*. *Topeka Livestock Auction, supra; see Ben Sager Chemicals International v. E. Targosz & Co.*, 560 F.2d 805, 809 (7th Cir. 1977) (Rule 60(b) motion for relief from default judgment requires showing of exceptional circumstances). Review of the denial of relief from default judgment is subject to the abuse of discretion standard. *Textile Banking Co. v. Rentschler*, 657 F.2d 844, 850 (7th Cir. 1981). Since defendants never offered to buttress their inadequate application to have the original entry of default set aside, it necessarily follows that they failed to satisfy the more stringent requirements for relief from default judgment. The district court clearly did not abuse its discretion in declining to grant relief from the default judgment.

Defendants received their day in court. Indeed they were accorded several different opportunities on several different days in court to conform to the requirements of the Federal Rules of Civil Procedure, and they abjectly failed to do so on each occasion. Whether defendants intended to do so or not, their procedural misadventures have prolonged this litigation significantly, thereby prejudicing plaintiff's right to a timely disposition of its claims for relief. Nevertheless, the trial judge was commendably disinclined to award judgment by default and made several attempts to steer defendants in the right direction, but they ignored his efforts in each instance. While defendants' tactics have been fraught with miscalculation, the trial court's patient conduct of these proceedings was free from any reversible error, and the judgment of the district court is accordingly AFFIRMED.