C.K.S. ENGINEERS, INC.,
Plaintiff-Appellee,

v.

WHITE MOUNTAIN GYPSUM
COMPANY, Defendant,

M.S. Riddle and Eryl A. Cummings,
Defendants-Appellants.

No. 83–1609.

United States Court of Appeals,
Seventh Circuit.

Argued Oct. 31, 1983.

Decided Jan. 30, 1984.

Donald J. Kaufman, Schaeffer & Helfand, Chicago, Ill., for defendants-appellants.

Thomas C. Kearns, Mount Prospect, Ill., for plaintiff-appellee.

Before COFFEY, FLAUM, Circuit Judges, and CAMPBELL, Senior District Judge.*

FLAUM, Circuit Judge.

This is an appeal from a denial of a motion to vacate a default judgment. For the reasons stated below, we affirm the decision of the district court.

I.

On March 28, 1981, the plaintiff-appellee brought this suit against the corporate defendant and the two individual defendants,

* The Honorable William J. Campbell, Senior District Judge of the United States District Court for the Northern District of Illinois, is sitting by designation.

both corporate directors and officers, alleging that the defendants owed it $661,-254.02 for engineering work performed pursuant to an agreement. The action was filed in the Northern District of Illinois, and jurisdiction was found on the basis of diversity of citizenship. The defendants, citizens of New Mexico, had an attorney in Albuquerque, Mark Shoesmith, retain an Illinois attorney, Martin Z. Craig, to represent them in this suit. The defendants claim that they asked Shoesmith to tell Craig to file an appearance in order to challenge the court's personal jurisdiction over them. Craig did not do this. Instead, he moved to transfer the case to the United States District Court in New Mexico and to dismiss the case for lack of subject matter jurisdiction. These motions were denied on October 1, 1981. The defendants then filed an answer to the complaint, denying most of the substance of the plaintiff's allegations.[1] On November 17, 1981, the plaintiff served several interrogatories on the defendants. The defendants requested an extension of the time in which to answer the interrogatories. This request was granted, and the deadline for providing the answers was set for January 18, 1982.

By January 18, 1982, no answers had arrived at the district court. Later that week, the court received a letter dated January 20, 1982, from James C. Ellis, an Albuquerque attorney. Ellis explained that he had been retained by M.S. "Mike" Riddle, one of the defendants, and he requested the court's permission to contest the court's personal jurisdiction over Riddle.[2] He also stated that Riddle wished to dismiss Craig as attorney of record in this case. With respect to the unanswered interrogatories, Ellis stated that should the court refuse to allow Riddle to contest the personal jurisdiction issue, more time would be needed to answer them. Soon thereafter, Craig moved to withdraw as attorney for the defendants. On February 8, 1982, the court granted Craig's motion and also ordered the defendants both to obtain local counsel and to answer the interrogatories by March 1, 1982.

The first of March passed without the appearance of local counsel or the interrogatory answers. On March 16, the plaintiff moved the court to strike the defendants' pleadings and to enter a default judgment. The court entered the order for a default judgment on March 17, but stayed its execution until March 29. On this latter date, with still no contact from the defendants, the stay was lifted. On May 20, 1982, attorney Donald J. Kaufman appeared on the defendants' behalf and moved that the default judgment be vacated pursuant to rule 60(b) of the Federal Rules of Civil Procedure.[3] He also moved that the two individ-

---

1. In their answer, the defendants admitted that the plaintiff "did perform engineering services from time to time," but denied that they had hired the plaintiff as alleged and denied that the value of the services provided was $661,254.02.

2. From our review of the record, it appears that the defendant Cummings has had little or no personal involvement in this case. In fact, according to a letter from Mark Shoesmith to the district court dated March 12, 1982, Cummings was in Mexico during most of the several months preceding the entry of the default judgment.

3. Rule 60(b) states in pertinent part:
   Mistakes; Inadvertence; Excusable Neglect; Newly Discovered Evidence; Fraud, etc. On motion and upon such terms as are just, the court may relieve a party or his legal representative from a final judgment, order, or proceeding for the following reasons: (1) mistake, inadvertence, surprise, or excusable neglect; (2) newly discovered evidence which by due diligence could not have been discovered in time to move for a new trial under Rule 59(b); (3) fraud (whether heretofore denominated intrinsic or extrinsic), misrepresentation, or other misconduct of an adverse party; (4) the judgment is void; (5) the judgment has been satisfied, released, or discharged, or a prior judgment upon which it is based has been reversed or otherwise vacated, or it is no longer equitable that the judgment should have prospective application; or (6) any other reason justifying relief from the operation of the judgment. The motion shall be made within a reasonable time, and for reasons (1), (2), and (3) not more than one year after the judgment, order, or proceeding was entered or taken.

Although the defendants did not specify the portions of rule 60(b) upon which they relied, both the magistrate and the district court concluded that their challenge was based most

ual defendants be given leave to file a motion to dismiss, and that the corporate defendant be given leave to file a motion to stay all proceedings pursuant to federal bankruptcy law, 11 U.S.C. § 362 (1982).

On July 23, 1982, the district court held a hearing on the rule 60(b) motion. At this hearing, Riddle testified as to the events leading up to the default judgment. He stated that a dispute had arisen between himself and Craig over Craig's litigation strategy and over the amount of fees being charged. Craig's firm had billed him for more than he had been led by Shoesmith to believe would be required, and he was unable to pay the full amount. This led to Craig's withdrawal from the case. Riddle stated further that he was unable to answer some of the interrogatories because attorneys for the corporate defendant, White Mountain Gypsum, would not permit him to examine certain corporate records.[4] When asked why he did not answer those interrogatories that he could answer from personal knowledge, Riddle stated:

> Well, I did not have—first of all, I did not have an attorney here. I didn't have any funding, any means of hiring an attorney here at the time that they were to be answered. I did try to get in touch with this court to no avail. I was told that the judge was on vacation and his secretary also was on vacation. I was trying desperately to explain my circumstance and ask for time. But not being an attorney—I am just a lay person—I don't know very much about that sort of thing. But I felt rather helpless in trying to deal with the court in a state where I was not acquainted nor hadn't been only but about two times in my life.

Tr. at 12. Riddle did not state, nor does the record indicate, whether James C. Ellis, the Albuquerque attorney who had contacted the court on Riddle's behalf in late January

1982, was still being retained by Riddle during February, March, and April of 1982.

Martin Craig also testified at the rule 60(b) hearing. He defended his litigation strategy by stating that he had been instructed to take orders directly from Shoesmith. Both he and Shoesmith had determined that a challenge to the court's personal jurisdiction would have been "inappropriate in light of the fact that Mr. Riddle made the initial contacts to Chicago from New Mexico as well as other considerations that we went through at length." Tr. at 18–19. Craig also stated that he had experienced a "lack of cooperation" with Riddle, particularly with respect to getting answers to the interrogatories. He said, "I never could understand why I wasn't getting the answers to those interrogatories and I kept inquiring as to assisting me in doing just that, answering the interrogatories." Tr. at 22–23. He added that he did not recall being informed of the problems Riddle was having getting the records of the corporate defendant.

Upon the recommendation of a magistrate, the district court denied the defendants' motion to vacate the default judgment under rule 60(b), stating that "[t]he conclusion is irresistible that the individual defendants believed that they could ignore this case and throw themselves upon the mercy of the court by contending that their local counsel was incompetent." *C.K.S. Engineers, Inc. v. White Mountain Gypsum Co.*, No. 81 C 1631, slip op. at 3 (N.D.Ill. Feb. 15, 1983). Only the individual defendants, Riddle and Cummings, appeal from that decision.

## II.

The question before us on this appeal is whether the district court erred in refusing to vacate the default judgment under rule 60(b). The general rule in this circuit is that relief from a judgment under

---

plausibly on rule 60(b)(1) or, alternatively, rule 60(b)(6). We agree with this conclusion.

**4.** Riddle's testimony on July 23 was the first time that the problems with the corporate defendant were brought to the attention of the district court. The record in this case does not

indicate the reason that these corporate records were not released. The district court refused to allow testimony on this question, deeming it irrelevant to a ruling on the rule 60(b) motion. Tr. at 10.

rule 60(b) is an extraordinary remedy and is granted only in exceptional circumstances. *Planet Corp. v. Sullivan,* 702 F.2d 123, 125 (7th Cir.1983); *Ben Sager Chemicals International v. E. Targosz & Co.,* 560 F.2d 805, 809 (7th Cir.1977). The decision to grant relief under rule 60(b) is left to the sound discretion of the trial court, and review of a trial court's decision to grant or deny rule 60(b) relief is subject to an abuse of discretion standard. *Inryco, Inc. v. Metropolitan Engineering Co.,* 708 F.2d 1225, 1230 (7th Cir.1983); *Breuer Electric Manufacturing Co. v. Toronado Systems of America,* 687 F.2d 182, 187 (7th Cir.1982).

Rule 60(b) is a rule of general application, providing relief from all types of final judgments, including but not limited to default judgments. *See generally* 11 C. Wright & A. Miller, Federal Practice and Procedure, §§ 2857–2866 (1973). Whether default judgments are to be treated differently under rule 60(b) than other types of judgments is a matter of some uncertainty in this circuit.[5] This circuit has a well-established policy favoring a trial on the merits over a default judgment. *United States v. An Undetermined Quantity of Article of Drug Labeled as Benylin Cough Syrup,* 583 F.2d 942, 946 (7th Cir.1978) (hereinafter cited as *Parke, Davis*); *Scarver v. Allen,* 457 F.2d 308, 310 (7th Cir.1972). On the basis of this policy, some decisions have spoken of a liberal attitude toward vacating default judgments under rule 60(b). *See Ellingsworth v. Chrysler,* 665 F.2d 180, 185 (7th Cir.1981); *Textile Banking Company v. Rentschler,* 657 F.2d 844, 854 (7th Cir.1981); *Dormeyer Co. v. M.J. Sales & Distributing Co.,* 461 F.2d 40, 43 (7th Cir.1972). In *Ellingsworth,* the court stated:

> A default judgment, like a dismissal, is a harsh sanction which should usually be employed only in extreme situations, or when other less drastic sanctions have proven unavailing. Thus, it is appropriate that Rule 60(b)(1) be liberally applied in the context of default judgments, espe-

cially where those judgments result from honest mistakes rather than willful misconduct, carelessness or negligence.

665 F.2d at 185 (citations omitted). Although this language suggests that rule 60(b) should be applied differently to default judgments than to other types of judgments, the majority of decisions in this circuit involving default judgments have not made this distinction. These decisions have simply stated the general rule that rule 60(b) relief is an extraordinary remedy and is granted only in exceptional circumstances. *See, e.g., Inryco, Inc. v. Metropolitan Engineering Co.,* 708 F.2d at 1230; *United States v. $48,595,* 705 F.2d 909, 912 (7th Cir.1983); *Breuer Electric Manufacturing Co. v. Toronado Systems of America,* 687 F.2d at 187; *Ben Sager Chemicals International v. E. Targosz & Co.,* 560 F.2d at 809.

Though not entirely consistent in their language, the default judgment cases in this circuit have been fairly consistent in their results. The common thread running through all the decisions is that the ruling on a rule 60(b) motion to vacate a default judgment should depend largely on the willfulness of the defaulting party's actions. Where it appears that the defaulting party has willfully chosen not to conduct its litigation with the degree of diligence and expediency prescribed by the trial court, this circuit has repeatedly upheld the trial court's denial of a rule 60(b) motion. *See, e.g., Inryco, Inc. v. Metropolitan Engineering Co.,* 708 F.2d at 1231 (defendant's counsel "showed a callous disregard for the procedures of this circuit"); *Textile Banking Co. v. Rentschler,* 657 F.2d at 854 ("the liberal attitude toward vacating [default] judgments is sharply modified when the defaulting party's actions appear to be willful"); *Parke, Davis,* 583 F.2d at 947 (the defaulting parties "deliberately chose not to assert their statutory rights"). *See also Ackermann v. United States,* 340 U.S. 193, 198, 71 S.Ct. 209, 211–212, 95 L.Ed. 207 (1950) ("[t]here must be an end to litigation

---

5. It has been definitely established that a decision on a rule 60(b) motion is subject to the same abuse of discretion standard of review in the default judgment context as in any other context. *Inryco, Inc. v. Metropolitan Engineering Co.,* 708 F.2d 1225, 1230 (7th Cir.1983).

some day, and free, calculated, deliberate choices are not to be relieved from"). Similarly, where a defaulting party was aware of or should have been aware of its responsibilities to the opposing party and to the court, and failed to live up to those responsibilities through unexcused carelessness or negligence, the default judgment has been left intact. *See, e.g., Breuer Electric Manufacturing Co. v. Toronado Systems of America,* 687 F.2d at 187 ("[w]hether defendants intended to do so or not, their procedural misadventures have prolonged this litigation significantly"); *Ben Sager Chemicals International v. E. Targosz & Co.,* 560 F.2d at 809 ("[n]either ignorance nor carelessness on the part of a litigant or his attorney provide grounds for relief under Rule 60(b)(1)"). On the other hand, in the few cases where the defaulting party has been able to demonstrate that its actions leading to the default were not willful, careless, or negligent, this circuit has reversed the district court's denial of the defaulting party's rule 60(b) motion. *See, e.g., United States v. $48,595,* 705 F.2d at 913 (defaulting party lacked funds, lacked counsel, and was imprisoned in a foreign country); *Ellingsworth v. Chrysler,* 665 F.2d at 185 (default attributable to an uncertain trial date, not to a "willful pattern of disregard for the court's orders or rules").

Our review of these cases leads us to conclude that rule 60(b) is applied liberally in the default judgment context only in the exceptional circumstance where the events contributing to the default judgment have not been within the meaningful control of the defaulting party, or its attorney. Although a default judgment is a harsh sanction and the law does favor trials on the merits, these considerations must be balanced against the need to promote efficient litigation and to protect the interests of all litigants. Accordingly, the decisions of this circuit reflect the notion that the district court must have the default judgment readily available within its arsenal of sanctions

"in order to ensure that litigants who are vigorously pursuing their cases are not hindered by those who are not." *Stevens v. Greyhound Lines, Inc.,* 710 F.2d 1224, 1230 (7th Cir.1983). In order for the default judgment to be an effective deterrent against irresponsible conduct in litigation, relief from a default judgment under rule 60(b) must be perceived as an exceptional remedy.

Whatever harshness there may appear to be in such a rule is mitigated somewhat by two considerations. First, a rule 60(b) motion is not the only way that a litigant may seek relief from a default. After the entry of a default, but before the entry of a final default judgment, the defaulting party may file a motion under rule 55(c) of the Federal Rules of Civil Procedure [6] to have the default set aside. The elements required for relief under rule 55(c) are essentially the same as under rule 60(b), but the test is more liberally applied. *Breuer Electric Manufacturing Co. v. Toronado Systems of America,* 687 F.2d at 187. Second, this circuit has stated many times and district court judges are well aware that defaults should be entered only when absolutely necessary, such as where less drastic sanctions have proven unavailing. *Inryco, Inc. v. Metropolitan Engineering Co.,* 708 F.2d at 1230; *Ellingsworth v. Chrysler,* 665 F.2d at 185. It follows from this proposition that a district court's refusal to set aside a default or vacate a default judgment as a practical matter may not be insulated from appellate review. It is true that these decisions are subject to an abuse of discretion standard, but this discretion of the district court on these matters is not unbounded; a district court abuses its discretion when it enters a default in inappropriate circumstances and then fails to set aside the default or vacate the default judgment.

### III.

Turning to the facts of this case, the appellants have conceded that the district

---

**6.** Rule 55(c) reads:

Setting Aside Default. For good cause shown the court may set aside an entry of

default and, if a judgment by default has been entered may likewise set it aside in accordance with Rule 60(b).

court acted properly in entering the default judgment.[7] The appellants also do not contest the district court's failure to set aside the default, since no motion to set aside the default was ever made. Furthermore, no challenge has been made to the procedures employed by the district court; we have every indication that the appellants received due process. The appellants' sole argument on this appeal is that the district court abused its discretion in refusing to vacate the default judgment under rule 60(b).

In their arguments to the trial court and to this court, the appellants have tried to excuse their default by pointing to the problems that they had with their Chicago attorney, Martin Z. Craig. They have stated that "[t]he main factor at work against the Defendants was the relationship that they had with their attorney in Chicago." Appellants' brief at 9. Specifically, they claim that there was a lack of communication and cooperation between Craig and themselves that was the source of a number of their problems and eventually led to Craig's withdrawal from their case.

Whether we interpret their alleged grounds for relief to be rule 60(b)(1) ("excusable neglect") or 60(b)(6) ("any other reason justifying relief from the operation of the judgment"), we find little merit in the appellants' position. The communication problems that the appellants had with Craig appear to be their own fault, at least in part. In his testimony before the district court, Riddle complained that he spoke to Craig a total of only two or three times during the entire time that Craig was representing them—almost one year—and that the discussion in one of those conversations was limited to the topic of Craig's bill. However, the appellants do not claim, and there is nothing in the record to indicate,

that they could not have spoken to Craig more frequently had they wished to do so. As to the alleged cooperation problems, the appellants complain that Craig failed to make motions to dismiss that they felt were warranted. However, it seems to us that such a lack of cooperation might have been cured easily had the appellants chosen to discuss the matter with Craig personally. Moreover, it appears from the record before us that Craig had adequate reasons for the actions that he chose to take.[8]

Even assuming, arguendo, that the appellants' problems with their counsel were no fault of their own, these problems can not excuse the default because they did not cause the default. The cause of the default was the appellants' failure to meet the March 1, 1982, deadline for responding to the appellee's interrogatories. By this time, Craig already had been permitted to withdraw from the case, and the district court already had taken into account the appellants' difficulties by extending twice the deadline for answering the interrogatories. To the extent that the appellants' problems with Craig excused their earlier failure to respond to the interrogatories, as the appellants claim, this excuse was extinguished on February 8, 1982, when the district court granted Craig's motion to withdraw, forgave the appellants' failure to meet the January 18, 1982, deadline for answering the interrogatories, and gave them an additional three weeks to answer the interrogatories. The appellants' duty to meet the new deadline was a matter within their control.

The appellants' subsequent failure to meet the March 1 deadline was, the district court found, inexcusable. The appellants claim that they had no Chicago counsel and that they lacked the funds to hire one, but they have offered no explanation as to why

---

7. The appellants explicitly made this concession on page four of a memorandum to the district court supporting their rule 60(b) motion.

8. As to Craig's failure to challenge the court's personal jurisdiction, see supra page 1204. The appellants also claim that they wanted Craig to move to have them dismissed because

the suit involved a corporate matter for which they were not personally liable. However, since in its complaint the appellee alleged facts that, if true, might have rendered the appellants personally liable, it does not appear that the appellants had proper grounds to win a dismissal.

Chicago counsel was needed to answer the interrogatories. They also contend that they could not get the records that they needed from the corporate defendant, and, though they could have answered some of the interrogatories from personal knowledge, failed to do so because they lacked the sophistication to handle the matter properly. While we recognize that laypersons should not be expected to possess the legal sophistication of lawyers, this is not an excuse for the appellants' inaction in this case. From the record before us, it appears that the appellants did have access to an attorney in Albuquerque, James Ellis, who, in his letter to the district court dated January 20, 1982, stated that he had been retained to represent the appellant Riddle. If there is a reason that the appellants did not or could not consult Ellis, they have not made this reason known, either to the district court or to this court. Moreover, the district court was understandably unsympathetic concerning the problems that the appellants had in getting records from the corporate defendant, since these problems were not made known to the district court until the July 1982 hearing to vacate the default judgment. The appellant Riddle did say that he attempted to contact the district court to seek help and to ask for more time, only to find that both the judge and the judge's secretary were on vacation. However, we must conclude that these efforts were less than diligent, since no contact was made with the district court until May 20, 1982, more than two months after the default was entered and nearly three months after the appellants' deadline for answering the interrogatories.

The appellants contend that they have a meritorious defense and have moved promptly to vacate the default judgment, and that these are important considerations weighing in their favor on this appeal. While it is true that these are necessary elements for relief under rule 60(b), *Inryco, Inc. v. Metropolitan Engineering Co.*, 708 F.2d at 1230, they are not sufficient elements for relief in the absence of some legitimate excuse for the default. Moreover, it is worth emphasizing that the ap-

pellants did not move promptly to vacate the default judgment, and that this fact weighs heavily against them. Had the appellants contacted the district court sometime in March or April of 1982, this would have been some indication of a "good faith" interest in litigating the case and a regard for the procedures of the court. Instead, they did nothing in March or April. Furthermore, when they finally did contact the court, on May 20, 1982, they were still without any of the interrogatory answers sought by the appellees. Had they offered some of these answers at this time, this too would have been a gesture of good faith weighing in their favor. Similarly, they might have made an offer to pay for the plaintiff's attorneys' fees and other costs due to the delay, but they did not. Nor were any gestures of good faith made at the July hearing on their rule 60(b) motion. In short, the appellants have done nothing to help themselves in this case.

The appellants also argue that the large amount of the judgment—more than $600,000—makes it so unfair as to warrant reversal of the district court. We recognize that under some circumstances the amount of money at stake might be a legitimate factor for a court to consider on a motion to vacate a default judgment, since relief under rule 60(b) is essentially equitable in nature and is to be administered upon equitable principles. *DeVito v. Fidelity and Deposit Company of Maryland*, 361 F.2d 936, 939 (7th Cir.1966). Yet, again, this factor is not enough for us to overturn the district court's decision in the absence of a good excuse for the default.

The significant amount of money at stake makes it more difficult to understand how the appellants could allow the default to occur. From our vantage point, it is impossible to know for certain why they did let it occur. The district court judge, who actually was involved in the events leading up to the default and who had a chance to observe both Riddle and Craig as they testified in court, concluded that the appellants

simply had a lack of regard for the rules and procedures of the court. We have no reason to dispute this conclusion; the appellants have not demonstrated the kind of diligence and interest in their case that might give us grounds to overrule the district court.

Under these circumstances, we have no choice but to affirm the decision of the district court. We note, however, that because a default judgment is a harsh sanction and a trial on the merits is preferred, there arises some question as to whether the district court should have entered the default judgment without first applying other sanctions against the appellants, such as an assessment of attorneys' fees. Particularly where, as here, there has been no finding of perjury or other fraud on the court, less severe sanctions may be sufficiently effective in alerting an irresponsible litigant to the seriousness of his or her neglect, protecting the interests of the other litigants in the case, and vindicating the integrity of the court. Nevertheless, given the facts of this case and the strong interest in allowing the district court broad discretion in this area, we cannot say as a matter of law that entering the default judgment was an abuse of discretion. Similarly, while we believe that rule 60(b) gave the district court more than enough latitude to give the appellants another chance, we do not enjoy the same latitude. Accordingly, we hold that the district court did not abuse its discretion in refusing to vacate the default judgment.