**NORTH CENTRAL ILLINOIS LABORERS' DISTRICT COUNCIL,**
**Plaintiff–Appellee,**

v.

**S.J. GROVES & SONS COMPANY, INC., Defendant–Appellant.**

**No. 87–1885.**

United States Court of Appeals,
Seventh Circuit.

Argued Jan. 14, 1988.

Decided March 10, 1988.

As Amended on Denial of Rehearing and Rehearing En Banc May 19, 1988.

---

tions, and, accordingly, they are affirmed without mention.

Robert L. Jackstadt, Suelthaus & Kaplan, P.C., St. Louis, Mo., for defendant-appellant.

David W. Stuckel, Harvey & Stuckel, Peoria, Ill., for plaintiff-appellee.

Before FLAUM and RIPPLE, Circuit Judges, and ESCHBACH, Senior Circuit Judge.

FLAUM, Circuit Judge.

On June 13, 1986, the United States District Court for the Central District of Illinois entered a default judgment in favor of North Central Illinois Laborers' District Council, Local 1203 ("North Central") and against S.J. Groves & Sons Company, Inc. ("S.J. Groves"). S.J. Groves filed a motion seeking to have the default judgment set aside under Federal Rules of Civil Procedure 60(b)(1) and 55(b)(2). The district court denied the motion. We affirm.

I.

On July 8, 1985, North Central filed a grievance alleging that S.J. Groves violated the parties' collective bargaining agreement. Specifically, North Central alleged that crews which included non-union employees performed "dismantling" work on the "LaSalle Bridge Project." The parties' collective bargaining agreement specified that only union members were to perform this type of work. On April 8, 1986, attorneys for S.J. Groves and North Central appeared before an arbitrator to resolve the grievance. S.J. Groves' attorney, Mr. Kaplan, contested the arbitrability of the grievance. Evidence was presented to the arbitrator, including the testimony of four witnesses, on the issue of the arbitrability of the grievance. On May 5, 1986, S.J. Groves moved for dismissal of the grievance on the grounds that the arbitrability of the grievance was a question to be resolved by the federal courts.

On May 8, 1986, North Central's counsel, Mr. Stuckel, agreed to stay the arbitration proceedings pending a judicial decision on the arbitrability of the grievance. On the same day, North Central filed suit in federal district court seeking to compel S.J. Groves to submit the grievance to arbitration. S.J. Groves was properly served with a copy of the complaint and the summons in accordance with Federal Rule of Civil Procedure 4(d)(3) on May 21, 1986. S.J. Groves' in-house legal staff overlooked the notice and took no action in response to it. On June 13, 1986, the district court entered a judgment and an "order for default" directing S.J. Groves to submit the grievance to arbitration.[1] Mr. Stuckel mailed a copy of the default judgment to the company's registered agent on June 18, 1986. On July 9, 1986, S.J. Groves discovered the default judgment and notified Mr. Kaplan.

---

1. North Central was also awarded $503.18 for reasonable attorneys' fees and court costs which it incurred. The default judgment ordered S.J. Groves to submit the dispute to arbitration; the merits of the grievance were of course left for the arbitrator to resolve.

Five days later[2] Mr. Kaplan filed a motion for relief from the default judgment under Rules 60(b) and 55(c). On May 18, 1987, the district court denied this motion. S.J. Groves appeals.

## II.

### A.

S.J. Groves' motion to vacate the default judgment was predicated in part on Rule 60(b)(1) of the Federal Rules of Civil Procedure.[3] Rule 60(b)(1) states that a court, upon motion by the party against whom judgment is entered, *"may* relieve [the] party or [the] party's legal representative from a final judgment" for "mistake, inadvertence, surprise, or excusable neglect...." (emphasis added).[4] S.J. Groves argues that its in-house counsel's failure to take action was due to mistake, inadvertence and excusable neglect within the scope of Rule 60(b)(1). The company states:

It is to be noted that the in-house legal staff of S.J. Groves was small, consisting of only two attorneys. At the time in question, one of the attorneys was disabled, and the entire burden of disposing of incoming legal documents devolved on one individual, Michael P. Katz. Amid the pressure, confusion, and increased workload caused by this situation [North Central's] [c]omplaint was inadvertently overlooked by the clerical staff until it was brought to Mr. Katz' attention on July 9, 1986.

Appellant's Brief at 7. The district court, however, concluded that S.J. Groves was not entitled to relief under Rule 60(b)(1). The court reasoned that "[S.J.] Groves' in-house counsel's failure to discover North Central's properly executed service of process and ensure that an appearance was entered on behalf of Groves for a period of *seven weeks* may have been inadvertent, but is *not* excusable."[5] *North Central*

---

**2.** The motion for relief and entry of appearance were apparently mailed on July 11, 1986, but not actually received and filed by the district court until July 14, 1986.

**3.** In its motion, S.J. Groves also argued that the district court lacked jurisdiction when the court entered the default judgment because the parties had not exhausted the arbitration process set forth in the collective bargaining agreement. We observe, as did the district court, that the issue of arbitrability is a question for judicial determination in the first instance. *AT & T Technologies, Inc. v. Communications Workers,* 475 U.S. 643, 106 S.Ct. 1415, 89 L.Ed.2d 648 (1986). We also find S.J. Groves' contention that it had not yet refused to submit to arbitration unpersuasive. The day the suit was filed by North Central the parties agreed to stay proceedings before the arbitrator pending resolution by the federal courts of the arbitrability of the grievance. The fact that the parties' stipulation to this effect was not signed until later does not mean S.J. Groves had not refused to submit to arbitration prior to this time. The district court rejected this argument and we agree.

S.J. Groves also cites Federal Rule of Civil Procedure 55(c) in support of its motion to set aside the default judgment. Rule 55(c) distinguishes between *entry of a default* and a *default judgment. See Chrysler Credit Corp. v. Macino,* 710 F.2d 363 (7th Cir.1983). The district court's entry of a default may be set aside for good cause. If the district court has entered judgment on the default, the circumstances in which the judgment may be set aside are enumerated in Rule 60(b). *Id.* Judgment was entered

against S.J. Groves and therefore our inquiry is limited to any relief afforded under the standards governing Rule 60(b).

**4.** In relevant part, rule 60(b) states:

(b) **Mistakes; Inadvertence; Excusable Neglect; Newly Discovered Evidence; Fraud, etc.** On motion and upon such terms as are just, the court may relieve a party or a party's legal representative from a final judgment, order, or proceeding for the following reasons: (1) mistake, inadvertence, surprise, or excusable neglect; (2) newly discovered evidence which by due diligence could not have been discovered in time to move for a new trial under Rule 59(b); (3) fraud (whether heretofore denominated intrinsic or extrinsic), misrepresentation, or other misconduct of an adverse party; (4) the judgment is void; (5) the judgment has been satisfied, released, or discharged, or a prior judgment upon which it is based has been reversed or otherwise vacated, or it is no longer equitable that the judgment should have prospective application; or (6) any other reason justifying relief from the operation of the judgment. The motion shall be made within a reasonable time, and for reasons (1), (2), and (3) not more than one year after the judgment, order, or proceeding was entered or taken.

Fed.R.Civ.P. 60(b). Rule 60(b) is applicable to any final judgment, not just default judgments.

**5.** Rule 60(b)(1) states that the court *"may"* set aside a judgment for "mistake, *inadvertence* ... or excusable neglect." Fed.R.Civ.P. 60(b)(1)

*Illinois Laborers' District Council, Local 1203 v. S.J. Groves & Sons Co.*, No. 86–1133, slip op. at 6 (C.D.Ill. May 18, 1987) (order denying motion to set aside default judgment) (emphasis in original). The district court therefore denied the company's motion for relief.

### B.

■ Motions to set aside a default judgment under Rule 60(b) require a court to reconcile the goal of permitting the defaulting party an opportunity to contest the merits of the dispute with the practical requirements of judicial administration. "A default judgment, like a dismissal, is a harsh sanction which should usually be employed only in extreme situations, or when less drastic sanctions have proven unavailable." *Ellingsworth v. Chrysler*, 665 F.2d 180, 185 (7th Cir.1981). We have recently re-affirmed that "this circuit has a well-established policy favoring a trial on the merits over a default judgment." *Passarella v. Hilton Int'l Co.*, 810 F.2d 674, 675 (7th Cir.1987). District courts, however, have a responsibility to keep their court calendars as current as possible. *Kagan v. Caterpillar Tractor Co.*, 795 F.2d 601, 608 (7th Cir.1986) (setting forth statistics as to caseload of district courts). This responsibility requires compliance with the rules of procedure and finality of judgment. *Tolliver v. Northrop Corp.*, 786 F.2d 316, 318 (7th Cir.1986). "In order for the default judgment to be an effective deterrent against irresponsible conduct in litigation, relief from a default judgment under Rule 60(b) must be perceived as an exceptional remedy." *C.K.S. Engineers, Inc. v. White Mountain Gypsum Co.*, 726 F.2d 1202, 1206 (7th Cir.1984). Because the balancing of these competing interests is best done by the district court, our review of the district court's decision to grant or deny relief under Rule 60(b)(1) is confined to determining whether the district court abused its discretion. *Dimmitt & Owens*

*Financial, Inc. v. United States*, 787 F.2d 1186, 1193 (7th Cir.1986). *See also Kagan*, 795 F.2d at 607; *C.K.S. Engineers*, 726 F.2d at 1205.

The crux of this case is the proper characterization of S.J. Groves' in-house error which resulted in S.J. Groves' failure to respond to North Central's complaint. We have often stated that "neither ignorance nor *carelessness* on the part of the *litigant* or his attorney provides grounds for relief under Rule 60(b)(1)." *E.g., Ellingsworth*, 665 F.2d at 184 (citation omitted) (emphasis added). We have also observed, however, that the "willfulness" of the defaulting party's actions is the "common thread" which runs through our decisions addressing Rule 60(b) motions to vacate default judgments. *C.K.S. Engineers*, 726 F.2d at 1205. "Rule 60(b) is applied liberally in the default judgment context only in the exceptional circumstances where the events contributing to the default judgment have not been within the *meaningful control* of the defaulting party, or its attorney." *Id.* at 1206 (emphasis added).

S.J. Groves states that its staff was operating short-handed and that North Central's complaint "was inadvertently overlooked." This explanation is not contested. Given S.J. Groves' efforts to defend against the grievance before the arbitrator, it would be difficult to find that its actions were "willful" and the district court made no such finding. The company's conduct did not demonstrate the blatant disregard for the district court's orders or rules that typifies most of our decisions which affirm an order denying Rule 60(b)(1) relief. *See, e.g., Hal Commodity Cycles Management Co. v. Kirsh*, 825 F.2d 1136 (7th Cir.1987); *Tolliver*, 786 F.2d 316.

The district court, however, could reasonably view the error as careless and within S.J. Groves' meaningful control. S.J. Groves' internal procedures simply broke down.[6] The company received the notice,

---

(emphasis added). The district court's suggestion that S.J. Groves' inaction was possibly inadvertent is not legally inconsistent with its decision to deny the company's Rule 60(b)(1) motion. *See infra* part II B.

6. S.J. Groves suffered a similar breakdown in internal procedures with respect to the copy of the default judgment mailed to S.J. Groves by North Central's counsel. The copy was mailed

but because of a filing or clerical error failed to notify its outside counsel who was handling the grievance defense. We cannot find that an abuse of discretion has occurred on the facts of this case.[7] *See Tolliver*, 786 F.2d at 319 ("[t]he decision under Rule 60(b) is discretion piled upon discretion, and ... such doubly discretionary decisions stand unless the judge was very far off base—if the judge relied on forbidden factors or omitted to consider some important relevant factor."). Although "rule 60(b) gave the district court more than enough latitude to give the appellants another chance, we do not enjoy the same latitude." *C.K.S. Engineers*, 726 F.2d at 1209. We hold therefore that the district court did not abuse its discretion in denying S.J. Groves' motion under Rule 60(b)(1) to set aside the default judgment.

## III.

■ S.J. Groves supplements its theory that the district court erred in denying the company's motion under Rule 60(b)(1) by arguing that North Central was required under Rule 55(b)(2) to give notice to S.J. Groves' counsel of its application for a default judgment and failed to do so.[8] Rule 55(b)(2) states in part:

> If the party against whom judgment by default is sought *has appeared in the action*, the party (or, if appearing by representative, the party's representative) shall be served with written notice

of the application for judgment at least 3 days prior to the hearing on such application.

Fed.R.Civ.P. 55(b)(2) (emphasis added). S.J. Groves argues that it had appeared in the action through its counsel, Mr. Kaplan, and that Mr. Kaplan therefore had to be given notice of North Central's application to the court for a default judgment at least 3 days before the hearing on this motion. Failure to provide such notice is a serious procedural error, and absent special circumstances the lack of notice requires that the default be set aside. *Muniz v. Vidal*, 739 F.2d 699, 701 (1st Cir.1984).

The application of Rule 55(b)(2) to S.J. Groves' situation hinges on the construction of the phrase "has appeared in the action." S.J. Groves argues that various federal courts have defined "has appeared" to include informal contacts between parties to a lawsuit. The company reasons that its efforts before the arbitrator contesting the arbitrability of North Central's grievance sufficiently demonstrated its intent to defend the suit in federal court and satisfied the appearance requirement of Rule 55(b)(2). Accordingly, S.J. Groves contends that Rule 55(b)(2) required that its attorney be given notice. North Central concedes that no such notice was given.

An "appearance" generally requires a presentation or submission to the court where the lawsuit is pending. 10 C.

on June 18, 1986, but S.J. Groves did not notify its outside counsel until July 9, 1986.

**7.** In *Dimmitt & Owens Financial*, we discussed both the factors involved in the district court's decision to grant or deny a Rule 60(b) motion and our standard of review. 787 F.2d at 1193. We stated:

> In [deciding whether to set aside a default judgment] ... the judge is weighing imponderables—the burden on his docket (which is to say the inconvenience to other litigants), the disturbance of expectations legitimately created by the default judgment, and the inroads on the general and essential principle that litigation must end, on the one hand, and on the other hand the injustice of allowing the default judgment to stand, which in turn is a function of both the merits of the movant's substantive claims and the strength of his excuse for committing the default. With the standard of decision so multifaceted, the ap-

pellate court's ability to fault the district judge's application of the standard is quite limited, and the scope of effective judicial review is therefore slight.

*Id.* This does not mean, however, that our review is meaningless. In *Passarella*, for example, we held that the district court abused its discretion when it denied Hilton International's Rule 60(b) motion. 810 F.2d 674. We concluded that the injustice of allowing the default judgment to stand—Hilton International was undisputably the wrong defendant—substantially outweighed the other factors the district court must consider when reviewing such motions. *Id.* at 677. This case does not present such a situation.

**8.** The district court's order did not specifically address S.J. Groves' argument that notice to Mr. Kaplan was required under Rule 55(b)(2), despite the fact that S.J. Groves raised the argument on page 7 of its "memorandum in support of motion for relief from judgment of default."

Wright, A. Miller & M. Kane, Federal Practice and Procedure § 2686 at 430. S.J. Groves, however, correctly points out that in the context of Rule 55(b)(2) the phrase "has appeared" has not been read to require the filing of responsive papers or actual in-court efforts by or on behalf of the nonmoving party. Several circuits have interpreted the phrase to include informal contacts between the litigants or their counsel if the party against whom a default judgment was sought "indicated to the moving party a clear purpose to defend the suit." *H.F. Livermore Corp. v. Aktiengesellschaft Gebruder Loeofe*, 432 F.2d 689, 691 (D.C.Cir.1970). *See also Muniz*, 739 F.2d 699; *Lutomski v. Panther Valley Coin Exchange*, 653 F.2d 270 (6th Cir. 1981); *Turner v. Salvatierra*, 580 F.2d 199 (5th Cir.1978); 10 C. Wright, A. Miller & M. Kane, Federal Practice and Procedure § 2686 at 432–33; 6 Moore's Federal Practice para. 55.05[3].[9] Settlement negotiations between the parties and even an informal phone call by the non-moving party's attorney have been interpreted as appearances under Rule 55(b)(2). *See Muniz*, 739 F.2d 699; *Lutomski*, 653 F.2d 270. *But see Direct Mail Specialists, Inc. v.*

*Eclat Computerized Technologies, Inc.*, 840 F.2d 685 (9th Cir.1988) (phone call to plaintiff by defendant upon receipt of notice did not indicate an intention to defend). These courts justify this reading of Rule 55(b)(2) on the grounds that it is consistent with the federal policy which favors resolving cases on the merits. The notice requirement, without imposing a significant burden on the moving party, forestalls default judgments without inviting or permitting the nonmoving party to engage in substantial delay tactics. *Livermore Corp.*, 432 F.2d at 691.

Although we respect the policy concerns underlying the cited opinions, we hold that Rule 55(b)(2) was not applicable in this case and therefore North Central was not *required* to provide S.J. Groves or its counsel with notice of the default hearing.[10] S.J. Groves took no action, formal or informal, from the time North Central filed suit in federal court until after the default judgment was entered.[11] The company's activities before the arbitrator occurred before the lawsuit commenced and were not responsive to North Central's formal court action.[12] This distinguishes S.J. Groves' situation from that present in *Livermore Corp.* and its progeny.

---

**9.** S.J. Groves did not cite, nor did we independently locate, any authority in this circuit adopting the construction of "has appeared" adopted in *Livermore Corp.* and its progeny.

**10.** We do not condone North Central's decision not to extend Mr. Kaplan the professional courtesy of notifying him of the default hearing. *See Passarella v. Hilton Int'l Co.*, 810 F.2d 674, 677 (7th Cir.1987) (criticizing failure to extend professional courtesy of providing notice of a default hearing in Rule 60(b)(1) context). We find only that under Rule 55(b)(2) such notice was not legally required.

**11.** S.J. Groves does not argue that appearing before the arbitrator was an "appear[ance] in the action" in the same manner as appearing before the district court would have been. Rather, the company argues that its conduct in arbitration indicated to North Central that S.J. Groves intended to defend the suit and therefore fell within the broad definition of "has appeared" that many circuits have adopted.

After North Central filed suit in federal court, S.J. Groves' counsel mailed to North Central's counsel a copy of the stipulation memorializing the parties' prior agreement to stay proceedings

before the arbitrator. This stipulation, however, merely culminated the proceedings before the arbitrator and was in no sense responsive to North Central's complaint.

**12.** We find *Baez v. S.S. Kresge Co.*, 518 F.2d 349 (5th Cir.1975), *cert. denied*, 425 U.S. 904, 96 S.Ct. 1495, 47 L.Ed.2d 754 (1976) instructive. In *Baez*, Kresge was properly served with notice of the lawsuit against it. The notice, however, was misplaced when it was mailed between two of Kresge's offices and was not located until after a default judgment had been entered against Kresge. The company attempted to have the judgment set aside, arguing that it had appeared and was therefore entitled to notice under Rule 55(b)(2). The Fifth Circuit disagreed, stating:

In [*Livermore*] ... the "appearance" was *responsive* to a formal action on plaintiff's part —namely filing the complaint. Kresge would have us extend the Rule to *any* case in which plaintiff knew defendant planned to contest the suit. We decline to do that, and hold—at least—that a 55(b)(2) "appearance" must be responsive to plaintiff's formal court action. *Id.* at 350.

We recognize that S.J. Groves' actions, regardless of the fact that they occurred prior to the filing of the complaint, perhaps more clearly indicate an intent to defend the suit than many of the post-complaint activities that have been interpreted as "appearances" in other cases. However, to hold that Rule 55(b)(2) requires notice in a case where all of the contacts between the parties occurred before the suit was filed would open the possibility that notice is required in every case where there is contact between the parties at some point in time. This would not necessarily be a bad thing; the uncertainty of when notice was required under Rule 55(b)(2) would provide an incentive for the moving party to give notice in every case. This presumably would reduce the incidence of default judgments and further the goal of having disputes resolved on their merits. The thrust of this position, however, is that notice of a default hearing should *always* be given to the nonmoving party. Rule 55(b)(2) of course states that notice of a default hearing is only required if the party "has appeared in the action." It would have been an easy task to draft the rule to specifically state that notice of a default hearing is always required, yet this was not done. The language chosen evidences an intent to impose a notice requirement only in limited circumstances. We decline to interpret "has appeared in the action" in a manner that gives no effect to the drafter's intentions. We hold that North Central was not required to give notice to S.J. Groves under Rule 55(b)(2). The decision of the district court is affirmed.