952 F.2d 1398
 NOTICE: Seventh Circuit Rule 53(b)(2) states unpublished orders shall not be cited or used as precedent except to support a claim of res judicata, collateral estoppel or law of the case in any federal court within the circuit.
Harry SIMON, Plaintiff-Appellee,
v.
PAY TEL MANAGEMENT, INC., Cornwall Securities, Inc, Pay
Telephone Investors II, and Barry Berman,
Defendants-Appellants.
 No. 91-2220.
 United States Court of Appeals, Seventh Circuit.
 Argued Dec. 18, 1991.
Decided Jan. 22, 1992.
 
 Before COFFEY, EASTERBROOK, and KANNE, Circuit Judges.
 
 ORDER
 
 1
 In accordance with our bench order pronounced on December 18, 1991, we affirm the district court decision and adopt the district court's memorandum opinion and order.
 
 
 2
 Affirmed.
 
 ATTACHMENT
 
 3
 IN THE UNITED STATES DISTRICT COURT FOR THE NORTHERN
 
 DISTRICT OF ILLINOIS EASTERN DIVISION
 
 4
 Harry Simon, Plaintiff,
 
 
 5
 v.
 
 
 6
 Pay Tel Management, Inc., a foreign corporation; Cornwall
 
 
 7
 Securities, Inc., a foreign corporation; Rothschild
 
 
 8
 Registry International, Inc., a foreign corporation; Pay
 
 
 9
 Telephone Investors II, a foreign corporation; and Barry
 
 
 10
 Berman, Defendants.
 
 No. 89 C 1041
 MEMORANDUM OPINION AND ORDER
 
 11
 (April 29, 1991)
 
 I. INTRODUCTION
 
 12
 This is an action for securities fraud brought pursuant to the Securities Act of 1933 and the Securities Exchange Act of 1934. The complaint includes a count for common law fraud. Plaintiff Harry Simon ("Simon") alleges that he was defrauded by defendants Pay Tel Management, Inc. ("Pay Tel"), Cornwall Securities, Inc. ("Cornwall"), Rothschild Registry International, Inc. ("Rothschild"), Pay Telephone Investors II ("PTI II"), and Barry Berman ("Berman") when he invested in defendant PTI II. On June 2, 1989, after defendants had failed for the third time to appear at court-ordered status hearings and pretrial conferences and had repeatedly failed to file their answer to plaintiff's complaint, the Court entered a default judgment against defendants, nunc pro tunc as of May 23, 1989, in the amount of $739,389.00 plus costs of suit of $120.00. Almost a full year later, on June 1, 1990, defendants filed the present motion to vacate that default judgment. For the reasons set forth below, the Court will deny defendants' motion and will permit the default judgment entered against defendants to stand.
 
 II. FACTS
 
 13
 Because the procedural history of this case was crucial to the entry of a default judgment, the Court will outline that history in some detail. Plaintiff filed his complaint in this action on February 8, 1989, alleging fraud in the sale to plaintiff of an interest in pay telephones under both the federal securities laws and the common law. The first status hearing in the case was held on March 27, 1989. This was the first hearing at which defendants failed to appear. On April 11, 1989, a second status hearing was held. William D. Kelly ("Kelly") appeared at that hearing on behalf of the defendants Pay Tel, Cornwall, PTI II, and the individual defendant Berman.[1] At the April 11 hearing, Kelly orally requested leave to file his appearance, which the Court granted on that date.[2] The next status was held on April 19, 1989. Kelly again appeared on behalf of defendants and requested an extension of time until May 10, 1989 for defendants to answer or otherwise plead to plaintiff's complaint. The Court allowed this first request for an extension of time.
 
 
 14
 The Court held another status hearing on May 9, 1989. Prior to appearing before the Court on that date, Kelly purportedly made a proposal to one of plaintiff's attorneys in an attempt to settle the case. Defendants offered to pay Simon $40,000.00 and to cancel the promissory notes covering plaintiff's investment in PTI II. Kelly's letter to Eric Moss ("Moss")[3] of May 9 advised Moss of plaintiff's response: "[t]he plaintiff's attorney advised me that he did not believe that this would be sufficient to settle the case but he would discuss the offer with his client and call me back with a response." (Aff. of Eric H. Moss, at p 4 & Ex. B.) At the May 9 status, the Court scheduled a pretrial conference, to be held on May 16, 1989 before the Honorable Nicholas J. Bua, and also ordered that defendants answer or otherwise plead to plaintiff's complaint prior to the pretrial conference. The Court's minute order of May 16 reads:
 
 
 15
 Pretrial conference set for May 16, 1989 at 9:00 a.m. before Judge Bua. Defendant is to answer or otherwise plead before May 16, 1989. Status hearing held.
 
 
 16
 At the May 16 pretrial conference, defendants' attorney Kelly advised Judge Bua that his clients had failed to communicate with him regarding the status of the case, that he was accordingly unprepared to file defendants' answer as required by this Court's May 9 order, that he would be unable to participate in the pretrial conference, and that he soon would be filing a motion to withdraw as the attorney for defendants. (Aff. of Ira J. Bornstein, at p 2.) Judge Bua did not enter a default judgment against defendants after this first pretrial but scheduled a second pretrial conference for May 23, 1989, and he directed Kelly to notify his clients of this new court date and of his intention to withdraw as their attorney in the case. Judge Bua also asked Kelly to instruct his clients that they must have another attorney present at the May 23 pretrial who was prepared to participate in the proceedings and that they must answer or otherwise plead to plaintiff's complaint before the May 23 pretrial or a default judgment would be entered against them. Judge Bua then told Kelly to prepare a motion to withdraw and to immediately serve that motion on his clients. (Id.)
 
 
 17
 Pursuant to Judge Bua's directive, Kelly prepared a motion to withdraw his appearance as the attorney for defendants. The motion was noticed for hearing on May 23, 1989, the date of the scheduled pretrial conference before Judge Bua. In his motion, Kelly stated that since filing his appearance on behalf of defendants, "he has made numerous efforts to obtain certain information about this case, evaluate the merits of the Plaintiff's claims and assess the Defendants' potential defenses to the action," that he "has not, however, received sufficient cooperation from corporate counsel or the Defendants to allow him to properly evaluate this case despite requests for same," and that this lack of information and cooperation necessitated his withdrawal. (Motion to Withdraw Appearance, at pp 2-4.)[4] The motion further stated that by serving a copy on defendants, Kelly "hereby advises them that their failure to file a substitute appearance and answer on or before the date of this motion could result in an adverse ruling, including the entry of a default judgment." (Id. at p 5.) The certificate of service attached to the motion reflects that the motion was mailed to defendants on May 16, 1989. At the May 23 pretrial, Kelly also advised Judge Bua that he had faxed to defendants' New York counsel a letter describing the contents of the motion to withdraw. (Bornstein Aff., at p 3.)
 
 
 18
 At the May 23 pretrial conference before Judge Bua, no substitute attorney appeared on behalf of defendants. Moreover, defendants still had not answered or otherwise pleaded to plaintiff's complaint. Kelly did appear at the May 23 pretrial. He advised Judge Bua that, although he had mailed defendants the motion to withdraw and had faxed a letter to their New York counsel describing the contents of that motion, he still had not heard from his clients. (Id.) Therefore, Kelly was unprepared to participate in the pretrial conference and requested that Judge Bua permit him to withdraw. (Id.) Judge Bua granted Kelly's motion and, in accordance with his statements at the May 16 pretrial, entered a default judgment against defendants. Judge Bua ordered plaintiff to submit a draft order of default judgment. After plaintiff submitted the draft order, this Court entered the following judgment on June 2, 1989:
 
 
 19
 By default in favor of plaintiff Harry Simon and against defendants Pay Tel Management, Inc., Cornwall Securities, Inc., Pay Telephone Investors II and Barry Berman under Counts I, II, III and IV of the complaint in the amount of $763,389.00 plus costs of suit of $120.00. This order be and is hereby entered nunc pro tunc as of May 23, 1989.
 
 
 20
 After entering the above order, the Court heard nothing further from defendants until June 1, 1990, when they filed the present motion to vacate the default.[5]
 
 
 21
 On June 7, 1989, Moss placed a telephone call to Ira J. Bornstein ("Bornstein"), one of the attorneys for plaintiff, and expressed an interest in settling the judgment that had been entered against defendants. (Bornstein Aff., at p 7.) Thus, defendants presumably had notice of the default judgment by that date. Bornstein and Moss spoke again on June 29, 1989, and in a series of conversations thereafter, the parties attempted to negotiate how defendants would pay off the judgment. (Id. at p 7.) The negotiations focused on how defendants would raise the money to pay the debt owed to Simon.
 
 
 22
 Initially, defendants represented that the money would come from a "Swiss transaction," which was scheduled to close in June 1989. When that closing was delayed and Simon was not paid, Bornstein wrote Moss a letter dated July 19, 1989, advising him that Simon had directed Bornstein "to initiate post-judgment proceedings unless this matter is settled immediately." (Aff. of Ira J. Bornstein II, at Ex. A (emphasis in original).)[6] On July 25, 1989, Moss advised Bornstein that defendants no longer would use the proceeds of the Swiss transaction to pay plaintiff but that they instead would utilize money realized from a transaction in Texas scheduled to close within a week. (Id. at p 12.) On August 4, 1989, Moss informed Bornstein that the Texas deal had closed and that the money realized would be used to pay plaintiff. (Id. at p 13 & Ex. C.) Bornstein and Moss again spoke on August 11, 1989. In that conversation, Moss informed Bornstein that defendants had decided to pay Simon with the proceeds of the Swiss deal after all and that that transaction would close on August 16. (Id.) Bornstein confirmed this conversation in a letter to Moss dated August 11, 1989. (Id. at Ex. D.)[7]
 
 
 23
 The Swiss transaction failed to close on the scheduled date and, as a result, Simon still did not receive the money promised him. When Simon heard nothing from defendants subsequent to the August 16 closing date, Bornstein wrote a letter to Moss dated August 24, 1989. Bornstein advised Moss that "your clients' intransigence has brought our client to the end of his patience.... If a settlement is not worked out by September 1, we have been directed to immediately execute on the outstanding judgment." (Id. at Ex. E.) The Swiss transaction did not close by September 1, 1989. Instead, on that date, Moss informed Bornstein that the transaction would now close in two weeks and that plaintiff would receive his money at that point. (Id. at p 17.) Moss also told Bornstein that he would immediately forward $18,000.00 as consideration for plaintiff's agreement to postpone execution on the default judgment. (Id.; see also id. at p 15.) On September 27, 1989, Bornstein received from Moss the $18,000.00 check that had been promised. (Id. at p 18.)[8]
 
 
 24
 Plaintiff, however, received no further information on the Swiss transaction. In his letter dated September 27, 1989, Bornstein informed Moss that plaintiffs would proceed to register their judgment on September 29. (Id. at Ex. G.) In a telephone conversation on that date, Moss prevailed upon Bornstein to again postpone registration of the judgment. (Id. at p 20.) In an October 2, 1989 letter to Moss, Bornstein wrote the following:
 
 
 25
 [T]his is to advise that with much difficulty we have prevailed upon our client to hold off two weeks before registering the judgment in New York. However, please be advised that we fully intend on registering the judgment in New York on October 16, 1989 regardless of the situation. We are giving you this notice so that you can arrange for alternate financing to pay off Harry Simon in the event that the Swiss deal either falls through or fails to close by that date.
 
 
 26
 (Id. at Ex. H.) In a letter dated October 13, 1989, Bornstein reiterated plaintiff's intention to register the judgment on October 16. (Id. at Ex. K.) When no money was forthcoming from defendants, plaintiff proceeded to register the judgment in the United States District Court for the Southern District of New York. The judgment was entered in that Court on October 20, 1989.
 
 
 27
 After plaintiff served restraining notices on certain of defendants' bank accounts, defendants moved before the New York court to stay enforcement of plaintiff's judgment and to vacate the restraining notices. (See Defendants' Notice of Motion in Case No. M 18 302, attached to Defendants' Motion, at Ex. H.) Defendants claimed that by restraining its bank accounts, plaintiff had violated a binding executory accord between the parties which had settled their dispute. The Honorable John E. Sprizzo, United States District Judge for the Southern District of New York, conducted two days of evidentiary hearings on defendants' motion, at which both Bornstein and Moss testified as to the above negotiations. On January 3, 1990, Judge Sprizzo granted defendants' motion. He found that by the middle or latter part of August 1989, a settlement agreement had existed between the parties and that registration of the judgment and service of the restraining notices had interfered with defendants' performance under that settlement agreement. (See Transcript of Proceedings before the Hon. John E. Sprizzo, Jan. 3, 1990 ("Tr."), at 42, 46, attached to Defendants' Motion, at Ex. G.) Accordingly, the Court enjoined plaintiff for a period of ninety days "from in any way interfering with the defendants' ability to put together the financing on this settlement agreement." (Tr. at 48.)
 
 
 28
 In reaching this determination, Judge Sprizzo made lengthy oral comments from the bench.[9] Significantly, he warned defendants to move quickly in seeking to vacate the default judgment in this Court. Addressing the default against defendant Berman, Judge Sprizzo instructed that he "ought to move to vacate the default judgment" and that "I expect if he doesn't move by tomorrow or next week, he is going to be in real trouble with the judge in Chicago." (Tr. at 31, 30.) Moreover, speaking as to all defendants, Judge Sprizzo warned that "you had better get that default judgment set aside in Chicago" and that "the longer you wait, the more difficult it is going to be to set aside the default judgment." (Id. at 34, 50.) Despite these warnings, defendants did not move quickly to vacate the default judgment, instead permitting the judgment to stand unchallenged in this Court for almost a full year.
 
 
 29
 When Judge Sprizzo's ninety-day injunction expired, defendants still had not paid any additional monies to plaintiff pursuant to their alleged settlement agreement. Instead, on June 1, 1990, almost one year after its entry by this Court, defendants finally moved to vacate the default judgment.
 
 III. ANALYSIS
 
 30
 Defendants bring the present motion to vacate the default judgment pursuant to Rule 60(b) of the Federal Rules of Civil Procedure.[10] In order to have a default judgment vacated pursuant to Rule 60(b), the defaulted party must show "(1) good cause for its default; (2) quick action to correct it; and (3) a meritorious defense." Zuelzke Tool & Engineering Co. v. Anderson Die Castings, Inc., 925 F.2d 226, 229 (7th Cir.1991); see also United States v. DiMucci, 879 F.2d 1488, 1495 (7th Cir.1989). Recent Seventh Circuit decisions show that parties seeking to set aside default judgments face a formidable task. See Zuelzke, 925 F.2d at 229 (collecting recent Seventh Circuit authority). Although default judgments traditionally have been viewed as an extreme sanction that should be utilized only as a last resort ( see Passarella v. Hilton International Co., 810 F.2d 674, 675 (7th Cir.1987)), the Seventh Circuit recently has been reluctant to interfere with the decisions of district courts in refusing to vacate default judgments. For example, in Dimmitt & Owens Financial, Inc. v. United States, 787 F.2d 1186, 1192 (7th Cir.1986), the court explained that it "has moved away from the traditional position that [default] judgments are strongly disfavored; we are increasingly reluctant to reverse refusals to set them aside." See also In re State Exchange Finance Co., 896 F.2d 1104, 1106 (7th Cir.1990).[11] Moreover, the Seventh Circuit recently reaffirmed that " '[i]n order for the default judgment to be an effective deterrent against irresponsible conduct in litigation, relief from a default judgment under Rule 60(b) must be perceived as an exceptional remedy.' " North Central Illinois Laborers' District Council v. S.J. Groves & Sons Co., 842 F.2d 164, 167 (7th Cir.1988) (quoting C.K.S. Engineers, Inc. v. White Mountain Gypsum Co., 726 F.2d 1202, 1206 (7th Cir.1984)).
 
 
 31
 It is clear that district courts have broad discretion in deciding Rule 60(b) motions to vacate default judgments. See, e.g., Zuelzke, 925 F.2d at 228-29; C.K.S. Engineers, 726 F.2d at 1205. In the exercise of that discretion in the instant case, the Court concludes that defendants have failed to establish either good cause for their default or quick action to correct it. Accordingly, the Court denies defendants' request to vacate the default judgment pursuant to Rule 60(b).
 
 
 32
 A. No Good Cause for the Default Has Been Shown.
 
 
 33
 Defendants request relief from the default judgment pursuant to subsections (1) and (3) of Rule 60(b). They claim both that the default was entered through their own "mistake, inadvertence, surprise, or excusable neglect" and through the fraud, misrepresentation, or other misconduct of the plaintiff Simon. Both of these theories are based on the premise that the parties effectively had agreed to a settlement of this lawsuit prior to the entry of the default. According to defendants, the existence of this settlement excuses their failure to appear and to answer plaintiff's complaint and establishes that plaintiff acted improperly by accepting the default in light of the parties' prior agreement. After carefully reviewing the affidavits and other evidence submitted pursuant to the present motion, the Court cannot agree with defendants' position.
 
 
 34
 1. Excusable Neglect.
 
 
 35
 Defendants put forth no grounds for mistake, inadvertence, surprise, or excusable neglect that would justify relief from the default judgment. Defendants seem to argue surprise or excusable neglect based upon their belief that an agreement had been reached settling this case and suggesting that the litigation not go forward. The Court finds such a belief incredible, however, in light of the numerous orders of this Court and of Judge Bua requiring defendants to submit an answer to plaintiff's complaint and to appear at status hearings and pretrial conferences.[12] On three separate occasions, this Court and Judge Bua ordered that defendants answer or otherwise plead to plaintiff's complaint by a specified date. Moreover, defendants were specifically warned that they must have an attorney present at the May 23, 1989 pretrial conference or a default judgment would be entered against them. Defendants failed to comply with any of these orders. It seems instead that defendants deliberately chose to ignore both their own local counsel and this Court.
 
 
 36
 The existence of settlement negotiations alone does not justify defendants' conduct. Parties engaged in litigation frequently discuss the possible settlement of their disputes, but the mere existence of such negotiations, without more, does not excuse the parties from attending court appearances and otherwise complying with the Court's orders. Even under defendants' scenario, a definitive settlement agreement was not reached until sometime after the default judgment was entered. (See Defendants' Mem., at 11-12.)[13] Defendants' attorney Moss can only suggest that "in March and April, 1989, I did most definitely discuss settlement with one or more of the attorneys from plaintiff's counsel's office" and that "those settlement discussions had continued through defendants' then local counsel, Mr. William Kelly." (Moss Aff., at p 2.) Plaintiff is correct in responding that those negotiations are not grounds to ignore the direction of this Court and of Judge Bua to answer or otherwise plead to plaintiff's complaint. (Plaintiff's Mem., at 8.) See Merrill Lynch Mortgage Corp. v. Narayan, 908 F.2d 246, 251 (7th Cir.1990) (negotiations regarding settlement insufficient to affect the course of litigation); Federal Savings and Loan Insurance Corp. v. Kroenke, 858 F.2d 1067, 1070-71 (5th Cir.1988) (existence of settlement negotiations not a reason "for ignoring the express admonition of the district court to file a responsive pleading within ten days or have a preliminary entry of default entered against him").
 
 
 37
 The events at issue here were within the meaningful control of defendants. By relying on the mere existence of settlement negotiations as abrogating their responsibilities to the Court, defendants failed to protect their own interests in this litigation. In such circumstances, "where a party willfully, albeit through ignorance or carelessness, abdicates its responsibilities, relief from judgment under Rule 60(b) is not warranted." Zuelzke, 925 F.2d at 229. Defendants' conduct herein was not based even on ignorance or carelessness. Instead, defendants willfully chose to ignore the explicit orders of Judge Bua and this Court. In such circumstances, a default judgment should not be vacated. See United States v. An Undetermined Quantity of an Article of Drug Labeled as Benylin Cough Syrup, 583 F.2d 942, 947 (7th Cir.1978).
 
 
 38
 The "neglect" exhibited by defendants herein simply was not "excusable," as required for relief pursuant to Rule 60(b)(1). See Zuelzke, 925 F.2d at 229. Accordingly, defendants have failed to establish good cause for their default pursuant to that subsection.
 
 
 39
 2. Fraud or other misconduct.
 
 
 40
 Defendants also have not established good cause pursuant to Rule 60(b)(3). In order to obtain relief from a default judgment under that subsection, defendants must establish that the alleged misconduct of plaintiff was of a type that prevented them from fully and fairly presenting their case. See An Undetermined Quantity, 583 F.2d at 948; see also In re Crist, 99 B.R. 878, 879 (Bankr.N.D.Ill.1989). Defendants have established no such conduct here.
 
 
 41
 As the Court already has explained above, defendants had every opportunity to fully and fairly present their case both to this Court and to Judge Bua. In fact, defendants were ordered to answer or otherwise plead to plaintiff's complaint on three separate occasions. Each subsequent order provided defendants additional time to prepare and present their defense to the Court. Defendants simply chose not to avail themselves of the opportunity presented. Defendants have produced no evidence suggesting that plaintiff in any way prevented them from communicating with Kelly, from attending the pretrial conferences before Judge Bua, or from answering or otherwise pleading to plaintiff's complaint.
 
 
 42
 In the absence of such evidence, however, defendants rely on statements of Judge Sprizzo in the New York proceedings suggesting that plaintiff may have perpetrated a fraud on the Chicago court in obtaining a default judgment. (Tr. at 28.)[14] Specifically, Judge Sprizzo stated that
 
 
 43
 --if Judge Bua in Chicago feels the way I do that there was some kind of arrangement here, then perhaps you may have misrepresented to him and committed a fraud upon the court out there in getting your default judgment. All these are issues he is going to have to face.
 
 
 44
 I think [defendants have] a good argument, based upon the evidence I have heard here, that some fraud may have been perpetrated on the court in Chicago, and that is an issue I am not going to address. It is up to the judge in Chicago.
 
 
 45
 (Id.)
 
 
 46
 This Court respectfully disagrees that there is any evidence of fraud or misconduct on the part of plaintiff herein. There is no evidence in the current record from which the Court can conclude that, prior to the entry of the default judgment, the parties had reached any "arrangement" settling their dispute or suggesting that the litigation should not proceed. Indeed, Moss does not even attest that the parties settled their dispute prior to the entry of the default judgment. Moreover, he cannot attest to any agreement that the litigation would not go forward or that defendant had no obligation to respond to plaintiff's complaint or to appear at scheduled court dates. The Court already has concluded above that any settlement negotiations prior to the entry of the default judgment were insufficient to affect defendants' duties before the Court. As a result, the Court cannot agree that the default may have been procured through some sort of fraud on the Court.[15]
 
 
 47
 Defendants go one step further, however, arguing not only that this Court should be influenced by Judge Sprizzo's statements, but also that those findings should bind plaintiff in the present forum. (See Defendants' Mem., at 9; Berman Aff., at p 16.) The Court finds this argument wholly meritless. The first and most obvious flaw in defendants' theory is that Judge Sprizzo did not intend his statements regarding a possible fraud on the Court to bind plaintiff in this forum. Significantly, defendants did not move to vacate the default judgment in the New York proceedings. Thus, the propriety of that judgment was not at issue before Judge Sprizzo. In commenting on his view of the record, therefore, Judge Sprizzo clearly did not intend to make definitive findings that would be binding on this Court. That fact is evident from his statements alone. Judge Sprizzo specifically stated that the issue of fraud "is an issue I am not going to address " and that that issue "is up to the judge in Chicago." (Tr. at 28 (emphasis added).) This Court will not disregard Judge Sprizzo's express intentions and find plaintiff bound by his statements regarding a possible fraud. Any other result would be contrary to the obvious intention of the New York Court.
 
 
 48
 Furthermore, the Court finds no evidence in the current record to support the fraud or other misconduct to which Judge Sprizzo referred. This Court already has explained at length that the current record is devoid of any evidence that would establish the slightest misconduct by plaintiff or his attorneys. Accordingly, the Court rejects defendants' suggestion that Judge Sprizzo's statements are binding on this Court. On the current record, defendants have failed to establish any fraud or other misconduct that would entitle them to relief from the Court's judgment.
 
 
 49
 B. No Prompt Action Was Taken to Correct the Default.
 
 
 50
 Even if the Court had found good cause for defendants' default, it still would deny the present motion because defendants failed to take prompt action to correct the default. Pursuant to Rule 60(b), defendants were required to make the present motion "within a reasonable time" after entry of the default and "not more than one year" after the judgment was entered by this Court. Fed.R.Civ.P. 60(b). The one year time limit in Rule 60(b) "is jurisdictional and may not be extended in any event." Wesco Products Co. v. Alloy Automotive Co., 880 F.2d 981, 985 (7th Cir.1989). Plaintiff does not contend, however, that defendants failed to make the present motion within the one-year time limitation.[16] Instead, Simon argues that defendants failed to make the motion within "a reasonable time," as required by the above rule.
 
 
 51
 Plaintiff is correct that defendants do not comply with Rule 60(b) simply by filing their motion within the absolute one-year time limitation. The delay in filing the motion must also be "reasonable." The Seventh Circuit has held that " 'the one-year period represents an extreme limit, and the motion will be rejected as untimely if not made within a 'reasonable time,' even though the one-year period has not expired.' " Kagan v. Caterpillar Tractor Co., 795 F.2d 601, 610 (7th Cir.1986) (quoting Wright & Miller, Federal Practice and Procedure, Civil § 2866, at 232); see also Planet Corp. v. Sullivan, 702 F.2d 123, 125-26 (7th Cir.1983). The determination of a "reasonable time" for purposes of Rule 60(b) " 'depends on the facts of each case, taking into consideration the interest in finality, the reason for delay, the practical ability to learn earlier of the grounds relied upon, and prejudice to other parties.' " Planet Corp., 702 F.2d at 126 (quoting Ashford v. Steuart, 657 F.2d 1053, 1055 (9th Cir.1981). " 'Although the fact that a motion was made barely within the one-year time limit gives the court the power to entertain it, as the delay in making the motion approaches one year there should be a corresponding increase in the burden that must be carried to show that the delay was 'reasonable'." Planet Corp., 702 F.2d at 126 (quoting Amoco Overseas Oil Co. v. Compagnie Nationale Algerienne de Navigation, 605 F.2d 648, 656 (2d Cir.1979) (emphasis in original)). Because defendants filed the present motion shortly before the expiration of the one-year period, they carry a heavy burden in establishing that their delay was reasonable. Defendants have failed to carry that burden in the instant case.
 
 
 52
 Defendants' explanation for their delay again is based on the alleged settlement negotiations between the parties. Defendants assert that plaintiff had led them to believe that their dispute had been "amicably resolved" and that, therefore, it was unnecessary to reopen the present litigation by filing a motion to vacate the default judgment. (See Defendants' Reply Mem., at 5.) The Court possibly could understand defendants' reluctance, between the months of June and the middle of October 1989, to suffer the expense necessary to vacate the default judgment, because the parties clearly were attempting to settle their dispute during that time. The Court, however, finds no evidence that plaintiff ever suggested that the default need not be vacated. Instead, while defendants stalled for time during the summer and early autumn of 1989, plaintiff repeatedly threatened to register the judgment in a New York court. Plaintiff eventually made good on his threat and had his judgment entered in New York on October 20, 1989. Shortly thereafter, plaintiff restrained certain of defendants' bank accounts as a means of collecting on the judgment. The Court does not understand how these actions could have led any reasonable defendants to believe that their dispute had been amicably resolved and that it was therefore unnecessary to move to vacate the default judgment entered by this Court.
 
 
 53
 Moreover, in granting defendants' motion to stay enforcement of the judgment for a period of ninety days, Judge Sprizzo explicitly told defendants that they should immediately move to vacate the judgment in this Court. With respect to the default against Berman individually, Judge Sprizzo warned that he "ought to move to vacate the default judgment" and that "I expect if he doesn't move by tomorrow or next week, he is going to be in real trouble with the judge in Chicago." (Tr. at 31, 30.) Furthermore, with respect to all defendants, Judge Sprizzo told their attorney to "get that default judgment set aside in Chicago" and that "the longer you wait, the more difficult it is going to be to set aside the default judgment." (Id. at 34, 50.) Despite these warnings, defendants continued to permit the current judgment to stand unchallenged.[17] They filed no motion to vacate the default during the period of the ninety day injunction issued by Judge Sprizzo. That injunction expired during the first week of April 1990. Even after the expiration of that injunction, when defendants had not secured the money to complete the alleged settlement, they still did not take "quick action" to vacate the default judgment. Instead, defendants waited until June 1, 1990, shortly before the expiration of the one-year limitation of Rule 60(b), to reappear before this Court. Considering all of these circumstances, the Court finds it unreasonable for defendants to suggest that they thought it unnecessary to vacate the default judgment because of the purported amicable resolution of this case.
 
 
 54
 The Seventh Circuit has found much shorter time periods unreasonable under Rule 60(b). For example, in Zuelzke, the defendant took no formal action to vacate a default judgment until four months after the entry of the judgment, instead relying on another party who was attempting to settle the dispute with the plaintiff. The Seventh Circuit there held that the defendant's "conduct to protect itself in district court could hardly be described as prompt." 925 F.2d at 230. Moreover, in a case in which a default judgment was entered on March 17 and a motion to vacate the judgment was made on May 20 of the same year, the Seventh Circuit emphasized that defendants had failed to move "promptly to vacate the default judgment, and that this fact weighs heavily against them." C.K.S. Engineers, 726 F.2d at 1208; see also Planet Corp., 702 F.2d at 126-27. In the present case, where defendants had notice of the default less than one week after its entry, defendants clearly did not take quick action to remedy their default.[18]
 
 
 55
 C. A Meritorious Defense.
 
 
 56
 Defendants propose to defend the claims alleged in plaintiff's complaint by contesting many of the instances of fraud alleged therein.[19] The Court sees no need to further lengthen its opinion by detailing defendants' proposed defense, for the Seventh Circuit recently recognized that the existence of a meritorious defense, standing alone, does not excuse the carelessness and outright defiance of the Court's orders exhibited by defendants herein. See Zuelzke, 925 F.2d at 230 (defendant "has not shown that it had good cause for its failure to act and regardless of whether it had a meritorious defense, it failed to present its defense to the court in a timely manner"); see also Pyramid Energy, Ltd. v. Heyl & Patterson, Inc., 869 F.2d 1058, 1062 (7th Cir.1989). The Court is not convinced that the defense proposed by defendants is meritorious; however, even if it were, the existence of such a defense does not require that the default judgment be vacated in these circumstances. Defendants had every opportunity to present their proposed defense to this Court two years ago. They chose not to avail themselves of that opportunity. They now must suffer the consequences of that decision.[20]
 
 IV. CONCLUSION
 
 57
 For the reasons set forth above, the Court denies defendants' motion to vacate the default judgment entered by this Court on June 2, 1989, nunc pro tunc as of May 23, 1989. Defendants have failed to demonstrate either good cause for their default or prompt action to correct that default. Accordingly, defendants are not entitled to relief from the judgment pursuant to Rule 60(b) of the Federal Rules of Civil Procedure.
 
 
 58
 /s/ILANA DIAMOND ROVNER
 
 UNITED STATES DISTRICT JUDGE
 
 
 [1]
 Kelly did not appear on behalf of defendant Rothschild. The Court was informed that Rothschild had not been served prior to the April 11 status. No appearance was ever filed on behalf of Rothschild, and there is no evidence that Rothschild ever was served with the complaint in this action. The default judgment entered by the Court on June 2, 1989 was not entered against Rothschild. Rothschild was never before the Court and has not joined the other defendants in the current motion to vacate the default judgment. Having heard nothing to the contrary about Rothschild, the Court hereby dismisses Rothschild from this case. The Court's references in this opinion to "defendants," therefore, do not include Rothschild
 
 
 [2]
 Although the Court granted Kelly leave to file his appearance on April 11, 1989, Kelly did not actually file an appearance on behalf of defendants until May 5, 1989
 
 
 [3]
 Moss, who is based in New York, is general counsel for defendants. (See Aff. of Barry J. Berman, at p 7.)
 
 
 [4]
 In his affidavit, Moss claims that he is "at a loss to explain Mr. Kelly's belief that we had not been in communication with each other." (Moss Aff., at p 4.) However, Moss does not specifically delineate any substantive conversations he may have had with Kelly on defendants' theory of the case or defendants' plan for preparing and eventually filing their answer or other responsive pleading. Instead, to refute Kelly's belief that defendants had been uncommunicative, Moss refers only to his office telephone records (which the Court would note were not provided for its review). Those records purportedly reflect calls from Moss to Kelly on April 10, April 19, and May 9, 1989. (Id.) However, Moss does not explain the nature of the discussions that took place in any of those conversations. Kelly could just as easily have been complaining about defendants' lack of cooperation in the defense of this litigation, rather than discussing defense strategy. In any event, the existence of three alleged telephone calls, without more, does not refute the clear import of Kelly's motion--that defendants had provided their attorney with no information that would permit him to properly defend this case
 
 
 [5]
 The Court would note that defendants have yet to submit any response to plaintiff's complaint. They had been served with that complaint for over seventy days when the default judgment was entered, yet they failed to file any responsive pleading. In fact, defendants had been specifically ordered to file such a pleading on three separate occasions. In moving to vacate the default, defendants still did not submit a proposed response to plaintiff's complaint. Although not required as part of a motion to vacate a default judgment, a proposed answer or other pleading in this instance would have indicated defendants' good faith in moving to vacate the default, in contrast to the utter disregard shown this Court and Judge Bua prior to entry of the default judgment. See C.K.S. Engineers, Inc. v. White Mountain Gypsum Co., 726 F.2d 1202, 1208 (7th Cir.1984)
 
 
 [6]
 Attached to Bornstein's July 11, 1990 affidavit is an earlier affidavit executed on December 8, 1989 and submitted to the New York court which heard plaintiff's action to collect the judgment. The Court will refer to the December 8, 1989 affidavit as "Bornstein Aff. II." The July 11, 1990 affidavit submitted pursuant to the present motion will be referred to simply as "Bornstein Aff."
 
 
 [7]
 In the August 11 letter, Bornstein wrote that "[t]his is to confirm our telephone conversation this afternoon during which it was agreed that in settlement of the above cause Harry Simon will receive a lump sum payment of $180,000.00 and will be removed from the outstanding note." In the letter, plaintiff agreed to wait until after the closing of the Swiss transaction to finalize the settlement. However, Bornstein also stated that "we further agreed that in the event the Swiss transaction does not close Wednesday we will proceed to finalize the settlement anyway." (Id.)
 
 
 [8]
 Moss' letter accompanying the check stated that "[t]his check represents 10% of the agreed cash rescission, tendered to you as a good faith deposit to be held in escrow pending finalization of the transactions, presently under negotiation, through which the full rescission contemplated will be accomplished." (Bornstein Aff. II, at Ex. F.) Plaintiff subsequently contested that the $18,000.00 should remain in the escrow of plaintiff's attorney. Plaintiff also was concerned that defendants had failed to provide any additional information on the pending Swiss transaction. (Id. at Ex. G.) In a September 27, 1989 letter to Moss, Bornstein expressed plaintiff's concerns, concluding that "if we do not receive all of the aforesaid items and information by Friday, September 29, 1989, we will immediately proceed to register our judgment in New York." (Id.)
 
 
 [9]
 Both plaintiff and defendants rely upon portions of Judge Sprizzo's comments as support for their respective positions on the present motion. Rather than at this point detailing Judge Sprizzo's specific findings, the Court will identify and address those findings and their impact on the present motion in the body of this opinion
 
 
 [10]
 In pertinent part, that rule provides as follows:
 On motion and upon such terms as are just, the court may relieve a party or a party's legal representative from a final judgment, order, or proceeding for the following reasons:
 (1) mistake, inadvertence, surprise, or excusable neglect;
 (2) newly discovered evidence which by due diligence could not have been discovered in time to move for a new trial under Rule 59(b);
 (3) fraud (whether heretofore denominated intrinsic or extrinsic), misrepresentation, or other misconduct of an adverse party;
 (4) the judgment is void;
 (5) the judgment has been satisfied, released, or discharged, or a prior judgment upon which it is based has been reversed or otherwise vacated, or it is no longer equitable that the judgment should have prospective application; or
 (6) any other reason justifying relief from the operation of the judgment. The motion shall be made within a reasonable time, and for reasons (1), (2), and (3) not more than one year after the judgment, order, or proceeding was entered or taken.
 
 
 [11]
 The Seventh Circuit in State Exchange Finance Co. noted that "[t]he entry of a default judgment is becoming--without interference from this court--a common sanction for late filings by defendants." 896 F.2d at 1106. This practice, the Court of Appeals has said, "reflects the overworked condition of the federal courts, including this court and the district courts of this circuit, a condition that naturally makes us reluctant to insist on the resurrection of deceased lawsuits." Dimmitt, 787 F.2d at 1193
 The Seventh Circuit recently reaffirmed this position in Metropolitan Life Insurance Co. v. Estate of Herbert Cammon, No. 90-1984, slip op. (7th Cir. Apr. 12, 1991). There, in refusing to overturn a default judgment entered against a defendant who had failed for a period of nine months to comply with the plaintiff's discovery requests, the Court of Appeals stated that
 [f]or a long time courts were reluctant to enter default judgments, and appellate courts were reluctant to sustain those that were entered. Courts emphasized that litigants are entitled to decisions on the merits, and that default is a harsh sanction. Those times are gone. National Hockey League [v. Metropolitan Hockey Club, 427 U.S. 639, 96 S.Ct. 2778 (1976) ] told appellate judges to respect the district judge's choice of sanction. And district judges have become more aggressive in using their ultimate weapon to promote the efficient conduct of litigation. More power to them.
 Id., slip op. at 6-7.
 
 
 [12]
 Defendants do not suggest that they had no notice of the Court's orders. Moreover, it is significant that defendants do not base their Rule 60(b)(1) argument on the fact that their local attorney Kelly withdrew on the same date that the default judgment was entered. Defendants argue no prejudice from that withdrawal
 In addition, the Court also would note that the record contains no evidence that Kelly ever informed this Court or Judge Bua that the parties had agreed to any settlement of their dispute. If a settlement agreement in fact had been reached, it is logical to assume that defendants would have informed their Chicago counsel so that he then could have informed the Court. That did not occur here. Instead, Kelly requested permission to withdraw from the case because his clients had failed to communicate with him, either about settlement or any other issue.
 
 
 [13]
 Although Judge Sprizzo in the New York proceedings concluded that the parties had agreed to a settlement, he found that such an agreement was reached only in August 1989, approximately three months after the default judgment was entered by this Court. Judge Sprizzo specifically found that the evidence did not support the existence of an agreement in June, when the default judgment was entered nunc pro tunc as of May 23, 1989. (See Tr. at 42.)
 
 
 [14]
 The Court is compelled here to clarify one point for the record. Throughout their papers on the present motion, defendants accuse Simon of entering a judgment of default in the face of the alleged settlement agreement that existed between the parties. (See Defendants' Mem., at 4, 11, 13, 17; see also Aff. of Barry J. Berman, at pp 12, 22.) The record is clear, however, that plaintiff filed no written motion for default judgment even after defendants had repeatedly failed to answer his complaint. Instead, Judge Bua ordered that defendants attend the May 23, 1989 pretrial conference and submit a response to the complaint by that date. Otherwise, a default judgment would be entered against them. Thus, defendants' implication simply is incorrect. Judge Bua initiated the default proceedings because he, like this Court, was exasperated with defendants' disregard for the prior orders of the Court. He had a perfect right to do so. See Metropolitan Life Insurance Co., slip op. at 5
 
 
 [15]
 The Court, in fact, finds Judge Sprizzo's statements on this issue confusing. Judge Sprizzo ultimately concluded that no settlement agreement had been reached until "the middle or latter part of August" 1989, and he specifically found that the evidence did not support the existence of an agreement in June. (Tr. at 42.) Judge Bua entered the current default judgment against defendants on May 23, 1989. If, according to Judge Sprizzo, there was no agreement in June, then the Court has difficulty understanding the nature of the purported fraud on this Court to which Judge Sprizzo referred. In any event, the Court's independent investigation of the current record has uncovered no evidence of fraud or other misconduct on the part of plaintiff
 
 
 [16]
 Although Judge Bua entered the default judgment on May 23, 1989, and this Court entered its own judgment on June 2, 1989, nunc pro tunc as of May 23, plaintiff does not suggest that the May 23 date should be utilized in calculating the one-year time limitation for purposes of Rule 60(b). Instead, plaintiff concedes that a judgment is not actually entered pursuant to the above rule until it is docketed, and docketing of the judgment in this case did not occur until June 5, 1989. (See Plaintiff's Mem., at 14 n. 7.)
 
 
 [17]
 Of course, this Court was unaware of the proceedings to enforce the default judgment in New York. This Court had last heard from the parties in this case on June 2, 1989, when it entered the default judgment nunc pro tunc as of May 23, 1989
 
 
 [18]
 Defendants also contend that plaintiff has not been prejudiced by their delay in filing the instant motion. The Court disagrees. The record before the Court is littered with defendants' broken promises, both to this Court and to Simon. The result has been that plaintiff has had to wait almost two years to attempt to collect a judgment entered in June 1989. During that time, defendants obtained an injunction for ninety days from Judge Sprizzo in New York during which they were to obtain the funds necessary to pay plaintiff pursuant to the alleged settlement agreement. However, defendants were unable to come up with the money during those ninety days. Contrary to defendants' contentions, the grant of relief from the default judgment at this late date would severely prejudice plaintiff. The time has finally come for defendants to pay the price
 
 
 [19]
 The Court would note that in their reply memorandum and in a supplemental affidavit of Berman submitted therewith, defendants have proposed a new and improved meritorious defense to plaintiff's claims. Berman states that Simon originally had subscribed to purchase twenty investment units in Pay Tel II, rather than the ten units that he currently owns. (Aff. of Barry J. Berman II, at p 4.) Because Berman was unable "to locate a sufficient number of installed Telephones to satisfy" the investor demand, he was forced to reduce the level of participation of certain investors such as Simon. As a result, plaintiff's investment was cut in half and he received only ten investment units, despite the fact that he had paid cash and executed a promissory note sufficient to cover twenty units. (Id.) Berman states that he then returned to plaintiff half of his initial subscription payment, plus accrued interest, and also cut in half Simon's obligation on the promissory note, all in accordance with the fact that Simon received only half of the interest for which he had paid. (Id. at p 5.) Defendants contend that these facts alone make out a meritorious defense because they establish the absence of a fraudulent intent. (Defendants' Reply Mem., at 3.) The Court fails to see how the fact that Berman returned to Simon money which was rightfully his has any affect on defendants' fraudulent intent. Under defendants' theory, a party could freely defraud an investor with respect to a substantial transaction so long as he returned to that investor any money that had been erroneously overpaid. In addition to being ludicrous, the argument was raised for the first time in defendants' reply memorandum. The Court need not consider arguments raised only in a reply memorandum. See W.E. O'Neil Construction Co. v. National Union Fire Insurance Co., 721 F.Supp. 984, 999-1000 (N.D.Ill.1989) (Rovner, J.). In any event, defendants have cited no authority for their novel theory, and the Court finds it lacking in any merit
 
 
 [20]
 Simon also contends that defendants' motion to vacate the default judgment is barred by the doctrine of judicial estoppel. (See Plaintiff's Mem., at 17-20.) Judge Sprizzo first raised the specter of judicial estoppel at the January 3, 1990 hearing in the New York proceedings. (See Tr. at 34-35.) He theorized that, by seeking an injunction to specifically enforce the alleged settlement agreement in the New York court, defendants may be estopped from then moving before this Court to vacate the default judgment. Judge Sprizzo stated that
 [o]nce you obtain the benefits of a court injunction, based upon the settlement agreement, if you are not able to perform within ninety days you may be foreclosed from seeking to vacate the default judgment.
 What I am saying is that, under the concept of litigation estoppel, having obtained the benefit from one litigation position, you can no longer change it when it suits you later on.
 (Tr. at 34-35.) Because the Court has reached the merits of defendants' motion to vacate the default judgment and has concluded that its prior judgment should stand, the Court declines to reach the issue of judicial estoppel.